Luis E. RODRIGUEZ-ABREU,
Plaintiff, Appellant,

v.

The CHASE MANHATTAN BANK,
N.A., Defendant, Appellee.

No. 92–1977.

United States Court of Appeals,
First Circuit.

Heard Dec. 11, 1992.
Decided Feb. 25, 1993.

**581**

Jorge M. Silva–Cuétara, San Juan, PR, for plaintiff, appellant.

Jay A. García–Gregory, with whom Arturo Bauermeister and Fiddler, Gonzalez & Rodriguez, San Juan, PR, were on brief, for defendant, appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, STAHL, Circuit Judge.

BOWNES, Senior Circuit Judge.

The plaintiff, Luis E. Rodriguez–Abreu ("Rodriguez"), appeals summary judgment granted in favor óf the defendant, The Chase Manhattan Bank, N.A. ("Chase"), on cross motions for summary judgment in his suit brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*, ("ERISA"). Finding that summary judgment was appropriate, we affirm.

## I.

### BACKGROUND

Rodriguez's claims involve two employee benefit programs offered by Chase: (1) the Long–Term Disability Plan ("LTDP"), and (2) the Voluntary Separation Plan ("VSP"). The LTDP provides a continuing source of income for eligible employees who become

disabled and unable to work for a continuous period of six months or longer. The VSP was a new plan of limited duration introduced by Chase in August of 1990 to reduce its work force. The VSP offered employees who applied before September 10, 1990, and who were accepted into the program a package of benefits: severance pay; up to twelve months of health care costs coverage; up to twelve months of coverage under the Chase life insurance plan, and group counselling to facilitate transition to another job with a different employer. The VSP application contained waiver and release provisions.

Rodriguez was employed by Chase from 1957 until he resigned effective September 21, 1990, as a participant in the VSP. The parties stipulated that Rodriguez was absent from work from March 19 until the effective date of his resignation due to a heart ailment.[1] While he was absent, Rodriguez was paid first through his accumulated vacation and sick leave and then by Chase through a special paid sick leave. Rodriguez did not apply for or receive LTDP benefits before his resignation from Chase.[2]

Chase introduced the VSP on August 8, and Rodriguez attended the orientation meeting on August 10. At the orientation, Rodriguez inquired as to whether he could participate in both the VSP and LTDP, and the Chase Compensation Manager informed him that the Bank would investigate his question. On August 17, Rodriguez met with Migdalia Lebron, Employee Benefits Officer of Chase, and asked about participation in both the VSP and LTDP. She told him that she would ask the Plan Administrator in New York. Also on August 17, Rodriguez signed the Application and Release for the VSP which provided that it could be withdrawn before September 10. During the week of August 20, Mrs. Lebron informed Rodriguez that he could not participate in both the LTDP and the VSP and that he would have to withdraw his application for the VSP in order to apply for LTDP benefits. Rodriguez did not withdraw his application for the VSP. Rodriguez's application was accepted by Chase on September 13, and his voluntary separation from Chase became effective on September 21, 1990.

On October 17, Rodriguez wrote to the Plan Administrator of the LTDP requesting a review of the decision that he was not entitled to benefits from both programs, review of the amount awarded for severance, and copies of the "Plan Administration" books for the two plans. Chase responded by a letter from Charles A. Smith, Executive Vice President of Chase, dated December 28, that Rodriguez's eligibility for LTDP benefits ended on September 21 with the termination of his employment, that he had given up his rights to LTDP benefits when he chose to participate in the VSP and denied his claim for increased severance benefits. Chase provided summary plan descriptions for the VSP and LTDP and provided a telephone number for further questions. On January 30, 1991, Rodriguez, through a letter from his attorney, requested review of the October determination as a "final administrative appeal," and again requested copies of the "Plan Administration" booklets. Chase affirmed

---

1. The district court stated in its Opinion and Order granting summary judgment for Chase that Rodriguez was absent from March 6 until he resigned effective September 21. On appeal, Chase argues that Rodriguez was not continuously disabled for the requisite six months prior to his resignation to qualify him for LTDP benefits. Chase points to other dates used to determine the date of disability: (1) Statement of Uncontested Material Facts in the Pretrial Order that Rodriguez stated in his Disability–Benefits Application Form signed on June 22, that he had been unable to work since April 25, and (2) the parties' stipulation that the disability period for Social Security benefits began on April 26. Rodriguez replies that Chase should be held to the stipulated date, March 19, for absence from work.

2. Rodriguez stated in his letter to the Plan Administrator of the LTDP, dated October 17, 1990, that he had been told that he could not submit claims for LTDP benefits until his nonoccupational disability insurance benefits ended in September or October of 1990. On appeal he explains that he did not apply for LTDP benefits because the Chase representatives told him that he would have to withdraw his application for the VSP before he could apply for LTDP benefits.

denial of Rodriguez's claims on March 12 and sent more copies of the plan summaries for the VSP and LTDP. Chase sent the "Plan Administration" booklets on May 2, 1991. In the meantime, Rodriguez had begun the present action against Chase.[3]

Both Chase and Rodriguez filed motions for summary judgment. The district court granted Chase's motion for summary judgment, and also granted Rodriguez's claim that his severance pay benefits should have been determined based upon his last scheduled salary review, and awarded him the increased amount. On appeal, Rodriguez contends that he was entitled to receive long-term disability benefits which were denied by Chase, and that the district court should have imposed sanctions against Chase for its delay in providing Rodriguez with requested information about Chase's long-term disability plan. Neither party appeals the district court's award to Rodriguez of increased severance benefits.

## II.

### STANDARD OF REVIEW

■ We follow the familiar standard when reviewing summary judgment in ERISA actions. *Allen v. Adage, Inc.*, 967 F.2d 695, 699 (1st Cir.1992); *Manchester Knitted Fashions v. Amalgamated*, 967 F.2d 688, 693 (1st Cir.1992). Summary judgment is appropriate if the factual materials submitted to the court establish that there is no genuine dispute as to material facts, and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

56(c); *Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 488 (1st Cir.1989). Our review of the district court's grant of summary judgment is both *de novo* and plenary: we review afresh the entire record in the light most favorable to Rodriguez, resolving all inferences in his favor. *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 579 (1st Cir.1992); *Allen*, 967 F.2d at 699; *Williams v. Caterpillar, Inc.*, 944 F.2d 658, 661 (9th Cir.1991).

■ A district court reviews ERISA claims arising under 29 U.S.C. § 1132(a)(1)(B)[4] *de novo* unless the benefits plan in question confers upon the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Interpretation of terms of a plan and determination of the validity of claims are not, in themselves, discretionary functions. *Id.* at 112, 115, 109 S.Ct. at 955, 956. The *Firestone* rule has been interpreted to mean that a benefits plan must clearly grant discretionary authority to the administrator before decisions will be accorded the deferential, arbitrary and capricious, standard of review. *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir.1989).

In this case, the district court employed the *de novo* standard based upon its findings that Rodriguez's claim was denied by the Plan Administrator[5], and neither the

---

3. The issue of exhaustion of administrative remedies has not been raised in this case. Most courts, including this one, generally require exhaustion of administrative remedies in ERISA cases. *Drinkwater v. Metropolitan Life Insurance Co.*, 846 F.2d 821, 826 (1st Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *United Paperworkers v. International Paper Co.*, 777 F.Supp. 1010, 1014 (D.Me. 1991) (collecting cases). Under the circumstances in this case, particularly in light of the fact that the plaintiff did not receive the information which specified the final appeal process to the Named Fiduciaries until after suit was begun, we will not address the issue of exhaustion of administrative remedies.

4. Although Rodriguez did not specify the statutory authority in his complaint to the district

court, his claims arise under 29 U.S.C. § 1132(a)(1)(B) which specifies:

(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or beneficiary—

. . . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

5. The Plan Administration Booklet identifies the plan administrator for all of Chase's benefit programs as the Corporate Human Resources Executive.

LTDP nor the Plan Administration Booklet granted discretionary authority to the Plan Administrator necessary to invoke the arbitrary and capricious standard. The Plan Administration Booklet contains the only direct statements of authority for determining benefits under Chase's benefit plans:

Named Fiduciaries

The Named Fiduciaries have general authority over the administration and operation of the Plans.

.    .    .    .    .

Plan Administrator

The Plan Administrator is primarily responsible for the publication of information to Plan participants and the filing of reports regarding the Plans.

.    .    .    .    .

In making a final decision, the Named Fiduciaries or their delegates have discretion in interpreting the meaning of Plan provisions and in determining questions of fact.

Rodriguez did not make a written request of the Named Fiduciaries as provided in the Plan Administration Booklet, but sent his letter of October 17, requesting a review of the denial of his LTDP benefits, to the Corporate Human Resources Executive of Chase. His letter was answered by Charles A. Smith, Executive Vice President of Chase, and further communication concerning Rodriguez's claims for LTDP benefits and additional severance pay was with Mr. Smith.

■■ Chase contends that the district court should have used the deferential, arbitrary and capricious, standard because the Plan Administrator (Smith) was acting as the delegate of the Named Fiduciaries who are granted discretionary authority. Chase points to the fact that Smith used "we" instead of "I" in his response to Rodriguez's final request which Chase suggests means that Smith was acting on behalf of the Fiduciaries. Chase also argues

that because Smith was answering Rodriguez's final request for review, his response was the final determination of Rodriguez's claim on behalf of the Fiduciaries.

As the district court found, neither the LTDP, the VSP, nor the Plan Administration booklet granted the Plan Administrator discretionary authority to review claims. The Plan Administration booklet granted the Plan Fiduciaries, or their delegates, discretionary authority. ERISA allows named fiduciaries to delegate responsibilities (other than trustee responsibilities) through express procedures provided in the plan. 29 U.S.C. § 1105(c)(1).[6] To be an effective delegation of discretionary authority so that the deferential standard of review will apply, therefore, the fiduciary must properly designate a delegate for the fiduciary's discretionary authority. *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1283–84 (9th Cir.1990).

Chase's claim that Smith was acting as the delegate of the Fiduciaries fails for lack of evidence. First, Chase fails to point to any plan provisions which provide express procedures for the delegation of the Fiduciary's discretionary authority to a delegate, and we have found none. Second, there is no expression of intent that Smith act as the delegate of the Fiduciaries and Smith did not claim to be acting on behalf of or as the delegate of the Fiduciaries. Instead, Chase relies on inferences from the circumstances to establish that Smith was the delegate of the Fiduciaries, which we find insufficient to prove delegation of discretionary authority, particularly in the context of Chase's motion for summary judgment. Because the relevant plan documents did not grant discretionary authority to the Plan Administrator and the Named Fiduciaries did not expressly delegate their discretionary authority to the Plan Administrator, we find that the district court correctly employed the *de novo* standard of review.

---

**6.** 29 U.S.C. § 1105(c)(1) provides:

The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

## III.

### DISCUSSION

■ ERISA regulates employee benefit plans through standards of conduct for fiduciaries, requirements of information disclosure, schedules for accrual and vesting of pension funds, and by providing remedies and access to the courts. 29 U.S.C. § 1001(b); *Massachusetts v. Morash*, 490 U.S. 107, 112–13, 109 S.Ct. 1668, 1671, 104 L.Ed.2d 98 (1989). The plans in question, the VSP and the LTDP, are both "employee welfare benefit plans" under ERISA and as such, are not subject to the stringent vesting, participation and funding requirements imposed by ERISA on "employee pension benefit plans." 29 U.S.C. § 1002(1) & (2); *Allen*, 967 F.2d at 698; *Bellino v. Schlumberger Technologies, Inc.*, 944 F.2d 26, 29 (1st Cir.1991); *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir.), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). When interpreting the provisions of an ERISA benefit plan, we use federal substantive law including the " 'common-sense canons of contract interpretation.' " *Bellino*, 944 F.2d at 29 (quoting *Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 489 (1st Cir.1989)). Both trust and contract principles apply to interpreting ERISA plans. *Allen*, 967 F.2d at 698. Because ERISA preempts state law related to employee benefit plans for the purpose of providing a uniform body of law, federal case law which has developed in interpreting ERISA plans governs rather than individual states' rules of contract interpretation. *Sampson v. Mutual Benefit Life Ins. Co.*, 863 F.2d 108, 110 (1st Cir.1988). Because state law provides the richest source of law of contract interpretation, we have incorporated state law principles in the process of developing a body of federal common law.

*Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir.1990).[7]

### A. *Eligibility for LTDP Benefits*

The terms of the LTDP require that an employee be continuously disabled for six consecutive months by a covered disability before the employee will be eligible to receive benefits. Rodriguez claims that he was eligible to receive LTDP benefits when his employment terminated pursuant to the VSP on September 21 because the requisite six-month waiting period had passed since the onset of his illness. He never received LTDP benefits nor did he apply for them.[8] On appeal, Chase has raised an issue about the beginning date of Rodriguez's disability for purposes of determining his eligibility for LTDP benefits before his resignation from Chase. Chase argues that the date of absence or onset of illness is not the same as the beginning of disability for purposes of the LTDP, and asserts that Rodriguez's disability did not begin until April.

Chase's argument raises issues of fact which, if material, would require remanding the case to the district court. The terms and conditions of the termination of Rodriguez's employment contained in the VSP Application and Release control the outcome of the case, however, and eliminate any need to pursue the factual dispute about the inception of disability and the date of Rodriguez's eligibility for LTDP benefits.

### B. *Release of Benefits and Claims in the Application for VSP*

We assume for purposes of this decision only, without resolving disputed facts and without reference to relevant LTDP provisions or applicable law, that Rodriguez would have been entitled to LTDP benefits on or before the date of termination of his employment with Chase if he had not ap-

---

7. Puerto Rico, where the parties in this action reside and where the contract was made, has codified its law of contract interpretation as follows:
   If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.

   If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail.
   P.R. Laws Ann. tit. 31, § 3471 (1990); *see also Simcox v. San Juan Shipyard, Inc.*, 754 F.2d 430, 445–46 (1st Cir.1985).

8. See *supra* note 2.

plied for and been accepted for the VSP. Within that framework, we next examine the effect of the release and waiver provisions in the Application and Release for the Chase Manhattan Bank, N.A. Voluntary Separation Program (VSP Application and Release).

■■■ The VSP Application and Release is a contract between Rodriguez and Chase establishing the mutual rights, benefits, obligations and waivers involved in the VSP. Interpretation of a contract presents a question of law for this court to determine. *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir.1989). "[A] contract is to be interpreted in a manner which gives reasonable effect to its terms and conditions." *Manchester Knitted Fashions*, 967 F.2d at 694. Contract language in an ERISA action is to be given its plain meaning. *Burnham*, 873 F.2d at 489. Determining whether contract language is ambiguous is also a question of law, and contract language is ambiguous if the terms are inconsistent on their face, or if the terms allow reasonable but differing interpretations of their meaning. *Federal Deposit Ins. Corp. v. Singh*, 977 F.2d 18, 22 (1st Cir.1992); *Fashion House, Inc.*, 892 F.2d at 1083. If the language of the contract is ambiguous, we turn to surrounding circumstances, undisputed extrinsic evidence, to divine the parties' intent. *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 456 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991) (interpreting a release in an ERISA action); Restatement (Second) of Trusts § 24 cmt. b, and § 164 cmt. e (1959). Unlike the interpretation of ambiguous terms in insurance policies which uses the doctrine of *contra proferentem*, when interpreting severance pay plans in the ERISA context, we generally do not construe ambiguous terms against the drafter. *Allen*, 967 F.2d at 701. Summary judgment based upon the construction of contract language is appropriate only if the meaning of the language is clear, considering all the surrounding circumstances and undisputed evidence of intent, and there is no genuine issue as to the inferences which might reasonably be drawn from the language.

*Healy v. Rich Products Corp.*, 981 F.2d 68, 72 (2d Cir.1992) (quoting *Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990)); *see also Singh*, 977 F.2d 18, 21 (1st Cir.1992); *Allen*, 967 at 699, 701–02.

■■■ The VSP Release and Application consists of two parts, (1) Application and (2) Full and Final Waiver and Release of Claims. The second section, entitled "Full and Final Waiver and Release of Claims," states in pertinent part:

> In return for the benefits available to me under the VSP, the sufficiency of which is hereby acknowledged, I fully and finally waive, discharge and release any and all claims of whatsoever nature, known and unknown, *other than* my right to the enforcement of the terms of the VSP and *my rights to vested benefits which have been accrued, funded and vested to date*, against The Chase Manhattan Bank, N.A., ... including but not limited to, claims under ... the Employee Retirement Income Security Act of 1974, ....

(Emphasis added.) Both parties contend that the language is plain and unambiguous, but they disagree about the interpretation. Rodriguez contends that the emphasized language excepts his right to LTDP benefits from the waiver because his right to those benefits had "vested": his rights were established and fixed because he had fulfilled the eligibility requirements and, therefore, he was entitled to the benefits. Chase counters that "vested", as used in the release, means pension benefits which are the benefits that ERISA requires to vest. Because the parties attribute reasonable but differing meanings to the term "vested", we find that the term is ambiguous as used in the emphasized language of the VSP Application and Release.

The Second Circuit has recently addressed the meaning of "vested" in the context of an exception to a release clause in a stock purchase agreement which involved release of benefits from ERISA plans in *Healy v. Rich Products Corp.*, 981 F.2d 68 (2d Cir.1992). The plaintiff, in *Healy*, had specifically requested that lan-

guage be inserted in the release to except particular plans from which he was already receiving benefits. The defendant added language to the release using the term "vested" apparently to effect the purpose requested by the plaintiff, and then claimed on motion for summary judgment that the term "vested" did not include the plaintiff's benefits. The district court did not address the intent of the parties, but instead used the definition of "vested" from the ERISA statute as applied to pension plans and found that the term did not include the plaintiff's benefits. On appeal, the Second Circuit held that the term could not be defined by the ERISA statute because the plans at issue were not ERISA pension plans. *Accord Bellino,* 944 F.2d at 31 ("we give preeminence to the natural meaning of ERISA plan terms, and we may not supplant such meaning with rigid definitions or contrary interpretations offered by the parties.") The Second Circuit, in *Healy,* remanded the case to the district court to determine the meaning of "vested" according to ordinary principles of contract interpretation with reference to evidence of the parties' intent from the surrounding circumstances including extrinsic evidence of intent if necessary. In the case before us, the evidence of intent is undisputed and does not require factual determination by the district court.

To divine the parties' intent in this case, we examine the VSP Application and Release as a whole and the undisputed circumstances surrounding the formation of the contract. In the Application section, the Separation Incentive sub-section provides: "I understand that, if this application is accepted, I will receive the following benefits in lieu of any benefits I might otherwise receive under Chase's salary continuance policy: [benefits are listed]." The LTDP is part of Chase's salary continuance policy because the stated purpose of the LTDP is to provide a disabled employee with a continuing source of income during the disability, and LTDP benefits are determined based upon the employee's monthly base salary. The parties do not dispute the meaning of this provision and the meaning is plain: Rodriguez agreed to waive his rights to LTDP benefits in exchange for the benefits listed in the VSP.

The undisputed circumstances surrounding Chase's offer of the VSP also demonstrate that Chase's intent was to require waiver of other benefits, such as LTDP benefits, by VSP participants. During the orientation and application process for the VSP, Rodriguez asked the Chase representative whether he could participate in the VSP and still receive LTDP benefits. The representative consulted with the Plan Administrator and then informed Rodriguez that the two plans were mutually exclusive and that he would have to withdraw his application for the VSP if he wanted to preserve his right to apply for LTDP benefits. Rodriguez decided not to withdraw his VSP application and did not pursue his LTDP benefits until after his employment was terminated. Despite Rodriguez's arguments to the contrary, there can be no genuine dispute that based upon the VSP Application and Release, read as a whole, and Chase's declared intent that the VSP and LTDP be mutually exclusive, the plain meaning of "vested" does not include Rodriguez's LTDP benefits even if the benefits had vested or accrued before the time of the release.

▇▇▇▇ ERISA does not prohibit knowing and voluntary relinquishment of employee benefits. *Dist. 29, United Mine Workers v. New River Co.,* 842 F.2d 734, 737 (4th Cir.1988). Further, the heightened scrutiny applied to waiver of rights accrued in ERISA pension plans does not apply in this case where the plans involved were both welfare benefit plans. *See, e.g., Finz v. Schlesinger,* 957 F.2d 78, 82 (2d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992). Issues of relinquishment of rights and waiver are governed by federal common law developed in ERISA cases rather than by particular state law although state law may inform the development of the federal common law. *Matter of Heci Exploration Co., Inc.,* 862 F.2d 513, 523 (5th Cir.1988). To be valid, a waiver of ERISA benefits must be an intentional relinquishment or abandonment of a known right or privilege. *Id.*

Rodriguez was aware of his potential eligibility for LTDP benefits when he began the orientation for the VSP. He asked about receiving both VSP and LTDP benefits, and Chase personnel informed him that the plans were mutually exclusive, that he would lose his right to LTDP benefits if he elected to participate in the VSP, and that if he wished to continue as a Chase employee and apply for LTDP benefits, he would have to withdraw his VSP application. Rodriguez admits that he understood that he was presented with a choice between alternatives: (1) choose the VSP, terminate employment with Chase, and receive the lump sum separation payment and other benefits; or (2) continue employment with Chase and apply for LTDP benefits. He was a management level employee at Chase. He consulted an accountant about the plans. Armed with the necessary information concerning his alternatives, Rodriguez made a voluntary and informed choice to participate in the VSP and waive his right to LTDP benefits. Under these circumstances, we find that Rodriguez's waiver was valid and that he relinquished his right, if any, to claim LTDP benefits after termination of his employment with Chase pursuant to the terms of the VSP.

### C. Denial of Request for Imposition of Penalties

■ A plan administrator is obligated by statute, 29 U.S.C. § 1024(b)(4),[9] to provide specified information about employee benefit plans to participants or beneficiaries upon written request. In this case,

Rodriguez, and then his counsel, requested, in writing, the Plan Administration booklets from Chase's Plan Administrator who sent the plan summary for the VSP and the plan booklet for the LTDP instead. After the last request, the Plan Administrator sent the Plan Administration booklet.

■ The district court denied Rodriguez's request for penalties to be imposed on Chase's Plan Administrator pursuant to 29 U.S.C. § 1132(c)(1)[10] on the grounds that "Rodriguez has failed to show that his rights were harmed or otherwise prejudiced by the delay in his receipt of the information and has not demonstrated bad faith or intentional delay on the part of the defendant." The imposition of penalties is committed, by statute, to the discretion of the trial court, and we will not overturn the court's determination absent an abuse of discretion. *Fisher v. Metropolitan Life Insurance Co.*, 895 F.2d 1073, 1077 (5th Cir.1990).

Although prejudice and bad faith are not prerequisites for imposition of penalties, these are factors which the district court properly considered in exercising its discretion not to impose penalties. *Godwin v. Sun Life Assurance Company of Canada*, 980 F.2d 323, 327 (5th Cir.1992); *Harsch v. Eisenberg*, 956 F.2d 651, 662 (7th Cir.), cert. denied, *Bihler v. Eisenberg*, —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). Although we acknowledge that the Plan Administration booklet was important and should have been sent, we agree with the district court that there is no evidence that the Plan Administrator acted intentionally

---

**9.** 29 U.S.C. § 1024(b)(4) provides:

The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

**10.** 29 U.S.C. § 1132(c)(1) provides in pertinent part:

Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

or in bad faith by sending the plan booklets after the first two requests and then sending the Plan Administration booklet only after the third request. We also agree with the district court that Rodriguez failed to show that his rights were prejudiced by the delay. Rodriguez asserts that he was not informed of the proper appeal process until he received the Plan Administration booklet in May, but he does not show how the delay caused him harm.[11] Therefore, we find that the district court did not abuse its discretion by declining to impose penalties against the Plan Administrator.

*Affirmed. Costs to appellee.*

---

**11.** Because exhaustion of administrative remedies is not an issue in this case, Rodriguez's failure to file a final appeal with the Named Fiduciaries, as provided in the Plan Administration booklet, has not prejudiced his court action.