Paul Vincent **Riley**,
Plaintiff/Appellee,
v.
**Public School System**,
Defendant/Appellant.
Appeal No. 93-027
Civil Action No. 92-0169
February 9, 1994

---

Submitted on Briefs October 28, 1993[*]

Counsel for appellee: Michael A. White, Saipan (White, Pierce, Mailman & Nutting).

Counsel for appellant: Robert C. Naraja, Attorney General, Douglas H. Strand, Assistant Attorney General, Saipan.

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

ATALIG, Justice:

The Public School System ("PSS") of the Commonwealth of the Northern Mariana Islands ("CNMI") appeals from summary judgment orders in favor of the plaintiff/appellee, Paul V. Riley ("Riley"). We hold that the trial court did not err when it concluded that Riley's wife was a dependent, entitled to repatriation expenses, under Riley's employment contract with PSS.

## ISSUE AND STANDARD OF REVIEW

The sole issue before us is whether, pursuant to the terms of Riley's excepted service employment contract with PSS, Riley's wife was a dependent entitled

---

[*] The panel unanimously agrees that this case is appropriate for submission without oral argument. *See* Com. R. App. P. 34(a).

to repatriation expenses to Riley's point of recruitment. We review orders granting summary judgment de novo. *Rios v. Marianas Pub. Land Corp.*, 3 N.M.I. 512, 518 (1993). On appeal, the evidence in the record is viewed in the light most favorable to the nonmoving party. *Id.*; *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 583 (1st Cir. 1993).

## FACTS AND PROCEDURAL BACKGROUND

Riley, while still single, was hired by PSS for a term from August 21, 1989, to November 20, 1989, as a Classroom Teacher IV under an excepted service employment contract. His point of recruitment was Hawaii. On November 22, 1989, Riley signed a renewal contract with PSS as a Classroom Teacher V for a term commencing November 20, 1989, and ending June 30, 1991. Section 8 of the terms and conditions ("terms"), appended to and made a part of the renewal contract,[1] provides, in pertinent part:

Expatriation and Repatriation:
(A) Travel: Travel and transportation expenses shall be paid by the Employer as follows:
(1) Coach or tourist-class air transportation costs by the shortest direct route for the Employee and the Employee's dependents from the point of recruitment to the duty station.

. . . .

(D) Repatriation: Upon completion of the agreed upon period of service under this contract or any subsequent Certified or Non-Certified contract entered into upon the expiration of this contract, the Public School System shall pay all return travel and transportation expenses to the point of recruitment, to the same extent and subject to the same limitations, as enumerated in sections 7(A) [sic] and 7(B) [sic], and if authorized Section 7(C) [sic] . . . . However, the

Employer will be discharged of this responsibility if repatriation expenses are not incurred within one (1) year of the termination date.

*See* Appellant's Excerpts of Record.[2]
"[S]pouses" are included in the definition of "dependents" under § 8(E) of the terms, *supra*.[3]

Riley was subsequently married in the CNMI on March 7, 1991, a little less than three months prior to the expiration of his contract with PSS. On May 23, 1991, Riley informed PSS in writing that he would not renew his contract when it expired. He also stated that he intended to remain in the CNMI but that he would be claiming reimbursement, under the contract, for expenses he would incur for planned air travel to Hawaii for both he and his wife.

On February 25, 1992, Riley filed a complaint in the Superior Court seeking payment from PSS for the cost of airline transportation for his wife from Saipan to Honolulu. Riley and his wife flew to Honolulu on May 20, 1992. PSS provided for Riley's ticket but not his wife's ticket. Riley moved for summary judgment on March 23, 1993, on both the repatriation and other related contractual issues. PSS filed a cross motion for summary judgment on April 14, 1993.

On April 29, 1993, the court found that Riley's wife was a dependent under the language of the contract, and that if she flew to Honolulu within one year after the expiration of the contract Riley was entitled to reimbursement for her fare. The court further found that the cost of such fare was $502. However, the court declined to award Riley the repatriation expenses, because there was no evidence in the record showing that Riley's wife flew to Hawaii within the one-year period. It stated that

---

[2] The provision refers to subsections 7(A), (B) and (C), which do not exist. Section 7 merely states the means by which additional terms and conditions may be added to the contract. The correct reference appears to be subsections 8(A), (B) and (C).

[3] Dependents are defined, in relevant part, as:

Employee's Dependents: The Employee's dependents are defined as spouse, children . . . unmarried and under twenty-one (21) years of age, or physically or mentally incapable of supporting themselves regardless of age, wholly dependent parents of the Employee and/or spouse, or children by a previous marriage for whom the Employee or his spouse has legal custody.

Terms, *supra* note 1, § 8(E).

---

[1] *See* Excepted Service Employment Contract No. 90-E00063 at 2 (renewal contract effective Nov. 20, 1989) and Terms and Conditions of Excepted Service Employment Contract [hereinafter "terms"] § 8(F) *in* Appellant's Excerpts of Record. The repatriation provision was not amended by a February 7, 1991, contract amendment.

Riley's motion could be renewed to show that his wife's air travel occurred during the specified period.

On May 4, 1993, Riley renewed his motion for summary judgment. Attached to this renewed motion was an exhibit of a plane ticket to Honolulu showing a travel date of May 20, 1992. On May 19, 1993, PSS filed a notice of non-opposition to Riley's renewed summary judgment motion, based on the April 29, 1993, order of the court and the documents supporting the motion for summary judgment.

On May 25, 1993, the court entered an order granting Riley's renewed motion for summary judgment, awarding him reimbursement for his wife's plane fare in the amount of $502. On the same day, the court entered judgment on related contractual disputes which included this amount with interest. PSS timely appealed on May 28, 1993.

## DISCUSSION

PSS argues that the mutual intent of the parties, at the formation of the contract, was to exclude any dependents who subsequently assumed such status from coverage under the repatriation clause. It urges us to go beyond the plain language of the contract and interpret differently "'words or clauses [which] would, if taken literally, defeat the intention.'" Appellant's Brief at 10 (citations omitted).

For the following reasons, we conclude that the contract language is neither patently ambiguous nor susceptible to reasonable differing meanings and, therefore, could be construed by the court. Additionally, we hold that the court did not err in concluding that Riley's wife falls within the contract's definitions of "spouse" and "dependent" for purposes of the repatriation clause.

### I. Intent of Contracting Parties Encompassed by Unambiguous Contract Language

 The intent of contracting parties is generally presumed to be encompassed by the plain language of contract terms. *See Fidelino v. Sadhwani*, 3 CR 284, 287 (N.M.I. Trial Ct. 1988).[4] The language

need only be given legal effect, or construed,[5] by the court and may be disposed of by summary judgment. *See Ada v. Sadhwani's, Inc.*, 3 N.M.I. 303, 310 (1992).[6] Summary judgment is inappropriate, however, where the court, as a fact-finder, must resort to determining the parties' intent because of ambiguity arising from disputed relevant evidence. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)); *Barris Indus., Inc. v. Worldvision Enters., Inc.*, 875 F.2d 1446, 1450 (9th Cir. 1989).[7]

 PSS's arguments imply that the parties' intent in forming the contract is a disputed issue, necessitating an interpretation[8] of the contract terms. Therefore, we must consider whether the contract terms are ambiguous and, if not, whether PSS submitted disputed relevant evidence supporting its interpretation of the contract.[9]

201.

[5] The construction of a contract is a legal process whereby contract terms are given effect. *See Nevets C.M., Inc. v. Nissho Iwai Am. Corp.*, 726 F. Supp. 525, 531 (D.N.J. 1989). This differs from contract interpretation, which requires a choice between alternative reasonable meanings which may attach to contract terms. *See id.* and *infra* notes 7-9 and accompanying text.

[6] *See also Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1360 (11th Cir. 1988), *cert. denied*, 488 U.S. 1041, 109 S. Ct. 865, 102 L. Ed. 2d 989 (1989).

[7] See also *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 456 (7th Cir.), *cert. denied*, 502 U.S. ___, 112 S. Ct. 373, 116 L. Ed. 2d 324 (1991): "[I]f the parties dispute the extrinsic evidence on an ambiguous contract, then a fact-finder must be called upon to determine the intent of the parties." The rationale behind this is that intent is the pivotal factor choosing between alternative interpretations. *See Roberts v. Consolidated Rail Corp.*, 893 F.2d 21, 25 (2d Cir. 1989).

[8] The "interpretation" of a contract relates to "the ascertainment of its meaning," CONTRACTS, *supra* note 4, § 200, and is distinguishable from the "construction" of a contract, which deals with the determination of the "legal operation or effect" of a contract, *id.* § 200 and reporter's note at 82-83.

[9] Were we to find the contract terms either patently or latently ambiguous we would, absent disputed relevant evidence, look to see if the court interpreted the contract properly. Had there been disputed evidence going to the interpretation of the contract terms, we would remand for fact-finding of the parties' intent.

[4] *See also NRM Corp. v. Hercules Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985). The intention relevant to the formation of a contract is *manifested* intent and not an undisclosed intention. *See* RESTATEMENT (SECOND) OF CONTRACTS [hereinafter CONTRACTS] §§ 2, 3, 5, 17-20 (1981). A party generally should not be bound to an intent of the other party unless there is evidence that he had reason to know of that intent. *See id.* §

## A. Contract Terms not Ambiguous

 In this matter, the court appears to have found no ambiguity in the contact terms. The court simply construed the contract according to the plain meaning of its terms. An ambiguity arises from contract language if it is either facially inconsistent (i.e., patent ambiguity), *Rodriguez-Abreu*, 986 F.2d at 586, *or* either disputed relevant extrinsic evidence or the contract language itself shows potential *reasonable* differing meanings of the term(s) (i.e., latent ambiguity).[10] *Cf. id.* and *Barris*, 875 F.2d at 1450 (California courts look to see if evidence renders otherwise patently unambiguous contract ambiguous).[11]

 Viewing the contract in a light most favorable to PSS, its terms, particularly "dependents," "spouse" and "repatriation," either individually or together are not ambiguous, rendering the legal construction of the terms by summary judgment inappropriate. The term "dependent" is generally understood to mean "one who . . . relies on another for support." BLACK'S LAW DICTIONARY 437 (6th ed. 1990), and commonly includes spouses and children, such as listed in the terms, *supra*. The term "spouse," included in the definition of "dependents," is not qualified in any way in the contract and generally means "[o]ne's husband or wife." BLACK'S LAW DICTIONARY, *supra*, at 1402. "Repatriation," though not defined in the contract, generally means "[t]he return or restoration of a person or object to his or its country of origin." *Id.* at 1299.

We do not see these general, unqualified terms as being either inconsistent with each other or susceptible to reasonable differing meanings. Thus, we look to see if PSS effectively raised a factual dispute below about the parties' intent.

## B. PSS Failed to Raise a Disputed Material Fact Regarding Parties' Intent

 Once a movant for summary judgment has shown that no genuine issue of material fact exists, the burden shifts to the opponent to show that such an issue does exist. *Cabrera v. Heirs of De Castro*, 1 N.M.I. 172, 176 (1990). Pursuant to Com. R. Civ. P. 56(e), the opponent, by affidavit or otherwise, "must set forth specific facts showing . . . a genuine issue for trial."[12] General denials or conclusory statements are insufficient. *See id.*; *Cabrera*, 1 N.M.I. at 176-77. A party, on appeal, may not allege a genuine issue of material fact where it failed to raise the issue below. *Cf. NRM Corp. v. Hercules Inc.*, 758 F.2d 676, 680 (D.C. Cir. 1985).

 In this matter, Riley moved for summary judgment, contending that his wife fell within the definition of "dependent," for repatriation purposes, under the plain language of the contract. To have defeated this construction, it was incumbent upon PSS to raise disputed evidence about the parties' intent. *Cf. Borja v. Goodman*, 1 N.M.I. 225, 231 (1990) (Dela Cruz, C.J., concurring). This was not done. PSS merely cross-moved for summary judgment and made conclusory allegations, with no supporting evidence or affidavits, regarding the parties' intent at the signing of the contract.[13] Because we find neither ambiguity in the relevant contract terms nor evidence in the record giving rise to reasonable differing meanings of those terms, we will look only to see if the court properly construed the contract language.

---

[10] Even where a contract is facially ambiguous, it may be interpreted by the court as a matter of law where "there is no evidence that would support a [*reasonable*] conflicting interpretation of the agreement." *America First Inv. Corp. v. Goland*, 925 F.2d 1518, 1522 (D.C. Cir. 1991) (emphasis added); *see also Lumpkin*, 933 F.2d at 456 ("If the court finds that a contract is ambiguous and that extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law").

[11] *See generally Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir. 1993). However, for the evidence to be admissible, it must give rise to a reasonably susceptible interpretation of the contract language. *See A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493, 496-97 (9th Cir. 1988); *America First*, 925 F.2d at 1522 (summary judgment appropriate if there is no evidence supporting conflicting interpretation).

[12] When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Com. R. Civ. P. 56(e).

[13] We have examined the record fully and have found only two instances in which PSS argued in memoranda that the mutual intent of the parties, at the formation of the contract, was to exclude subsequently-acquired dependents from coverage under the repatriation clause. Conclusions submitted in a memorandum are not sufficient for purposes of Com. R. Civ. P. 56. See *supra* note 12 and accompanying text.

## II. Court did not Err in Concluding that Riley's Wife Fell within Definition of "Dependent" for Purposes of Repatriation

 Where possible, terms in "a contract should be given their ordinary and common meaning." *Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed. Cir. 1992); *cf. Ada*, 3 N.M.I. at 309. We conclude that the court properly construed the relevant terms of the employment contract.

Riley's wife is his "spouse." Because this term is not qualified in the contract, she falls within the contract's definition of "dependent," which includes spouses. *See supra* note 3. When Riley was repatriated under the contract terms and returned to Hawaii, he was accompanied by his wife. As his dependent, Riley's wife was entitled to repatriation expenses as well. In addition, the court's construction of the contract language gave effect to the entire agreement, as opposed to severing its provisions and reforming the definition of "dependent" to suit any undisclosed intentions of a party. See *supra* note 4 and accompanying text.

PSS states that it "bargained for the hire of a single person [thereby] defin[ing] its costs." Appellant's Brief at 11. In other words, it contracted to hire a single person and it did not expect that single status to change. Further, PSS objects to its "being required to use public funds to pay for Mr. Riley's wife to accompany him on a trip to his point of recruitment although he is employed in the Commonwealth and both reside [in the Commonwealth]." *Id.* at 6. We do not see the relevance of these arguments. The contract does not require, for purposes of repatriation, that either the employee or his or her dependents return to the point of hire to resume residence, nor does it link PSS's duties to repatriate a spouse with the employee's marital status at the time of hiring.

 PSS also argues that because "the definition of 'dependent' in both contracts is *broad*, it follows that PSS was not bargaining to repatriate an unlimited number of subsequently acquired dependents." *Id.* at 11 (emphasis added). We do not follow this argument. The legal effect of a broad definition is more inclusive than a narrow one. *Cf. generally Trinity Ventures, Inc. v. Guerrero*, 1 N.M.I. 54 (1990).[14]

Finally, PSS asks us to infer that because the provision is entitled "Expatriation and Repatriation," repatriation is limited only to those persons expatriated under the contract. We disagree. Nowhere in the provision is it stated that repatriation is applicable only to those persons expatriated under the contract. Consequently, we will not read the two terms as relying upon each other for effect.

Had PSS intended to exclude any subsequently-acquired dependents from coverage under the repatriation clause, it should have drafted the contract accordingly.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the Superior Court's orders and judgment in favor of the plaintiff/appellee, Paul V. Riley.

---

[14] In *Trinity*, we found the lower court's broad interpretation of the term "'land transaction' to mean *any* land transaction involving *any* of the . . . lots . . . [to be] a reasonable, lawful, and effective interpretation" of the contract. *Trinity Ventures, Inc. v. Guerrero*, 1 N.M.I. 54, 64 (1990).