United States Court of Appeals
For the First Circuit


No. 96-1885

GIDEL RIVERA-FLORES,

Plaintiff, Appellant,
v.

BRISTOL-MYERS SQUIBB CARIBBEAN, ET AL.,
Defendants, Appellees.


ERRATA SHEET ERRATA SHEET

The opinion of this Court issued on April 25, 1997 is corrected
as follows:
On the cover sheet, insert prior to date of decision "Jay A. 
Garcia-Gregory and Fiddler, Gonzalez & Rodriguez on brief for appellee 
Prudential Insurance Company."

United States Court of Appeals
For the First Circuit


No. 96-1885

GIDEL RIVERA-FLORES,

Plaintiff, Appellant,
v.

BRISTOL-MYERS SQUIBB CARIBBEAN, ET AL.,
Defendants, Appellees.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose A. Fuste, U.S. District Judge] 


Before

Selya, Circuit Judge, 
Aldrich, Senior Circuit Judge, 

and Lynch, Circuit Judge. 

Octavio A. Diaz-Negron, Idalia M. Diaz and Peter J. Porrata for 
appellant.

Carl Schuster, with whom Maria Santiago de Vidal, Maria 
Maldonado-Nieves and Schuster Usera Aguilo & Santiago were on brief 
for appellees.
Jay A. Garcia-Gregory and Fiddler, Gonzalez & Rodriguez on brief 
for appellee Prudential Insurance Company.



April 25, 1997


LYNCH, Circuit Judge. Gidel Rivera-Flores worked LYNCH, Circuit Judge. 

first as a machine cleaner and later as a line operator for

Squibb Manufacturing Inc. ("SMI") in Humacao, Puerto Rico.

Some two years after his employment was terminated under a

severance program, Rivera, who wore a prosthetic device in

place of his lower left leg, sued SMI and its insurer,

Prudential Insurance Co., under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq., the 

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

1001 et seq., and other federal and Puerto Rico employment 

statutes. The employer countered with a waiver and release

which Rivera had executed when his employment terminated and

for which he received certain benefits. Rivera responded

that the release was invalid. On cross-motions for summary

judgment, the district court entered summary judgment for the

defendants. Rivera appeals. This case raises an issue of

first impression in this circuit concerning the

enforceability under the ADA of waivers and releases of

claims by employees.

We hold that the general principles for evaluating

such waivers and releases, enunciated by this court for

claims arising under other employment statutes, apply to the

ADA as well: ADA waivers and releases must be knowing and

voluntary, as evidenced by the totality of the circumstances.

-3- 3

Whatever the merits of any claims Rivera had

arising out of his employment,1 he presented no competent

evidence that created a genuine issue of material fact as to

whether his waiver and release were voluntarily and knowingly

given, and whether he had the capacity to give such a

release. We affirm.

I.

Rivera was born in 1953 and has a high school

education. He began working for SMI in June 1984; before

that he worked as a police officer for ten years. Rivera's

left leg had been amputated below the knee after a motorcycle

accident he suffered in 1982 when he was a police officer.

His work assignments at SMI, despite his requests for

accommodation (which were partially met), caused his stump to

become irritated and bleed. In pain, he began exhibiting

symptoms of, and eventually received a letter from a doctor

diagnosing him with, post-traumatic stress disorder and an

anxiety disorder.

Rivera left work due to disability in December

1992. In the spring of 1993, he received a letter inviting

him to participate in a voluntary separation plan. He sent a

letter accepting this invitation. He also applied for long-

 

1. There is no indication in the record that plaintiff first
presented his claim to the Equal Employment Opportunity
Commission ("EEOC"), which is a prerequisite to bringing suit
under the ADA. Defendants never raised this issue and it was
not argued before us. We decline to address the matter.

-4- 4

term disability benefits available through the employer and

submitted a statement in support from his attending

physician. The insurer denied the request for long-term

disability benefits; Rivera sought reconsideration in

September of 1993 and submitted further documentation to the

insurer. Rivera pursued his claims for disability benefits

throughout 1993 and thereafter.2

In the fall of 1993, faced with the shutdown of

certain of its operations, SMI sent Rivera and other

employees a letter of dismissal stating that all employees

who wished to receive voluntary separation benefits had to

sign a waiver agreement. Under the terms of the Separation

Agreement and General Release Form (the "Agreement"), dated

October 18, 1993, the employee agreed that he would make no

legal claims against the company or its insurer.3 He

received, in turn, certain benefits beyond those he was

otherwise entitled to receive. The Agreement stated that the

 

2. In response to his claim for disability benefits, the
Social Security Administration found in September 1994 that
Rivera was disabled and suffered from pain, post-traumatic
stress disorder and dysthymic disorder.

3. The Agreement provided in relevant part that the employee
agreed that "he shall file no action against the Company, nor
against any entity or person associated with the Company
. . . before any agency or administrative instrument, board
or court, federal or local, which might be directly or
indirectly related to his employment with the Company or with
the termination of the same." The Agreement encompassed
causes of action including but not limited to the "'Americans
with Disabilities Act,' or the local legislation that
protects persons with physical and/or mental impairments."

-5- 5

signatory acknowledged that he was signing the Agreement

voluntarily, that he fully understood the Agreement, that he

had been advised to consult with a legal representative, and

that he had seven days to revoke his consent. On December 1,

1993, Rivera executed the Agreement. He never revoked his

consent. He now claims that he signed the Agreement, which

he did not read at the time, under duress and while he was

suffering under a psychiatric disability.

II.

Rivera challenges the validity of the release on

three grounds: that enforcement of the release would be

contrary to the policies animating the ADA, that the evidence

raised a dispute as to whether the execution of the release

was knowing and voluntary, and that he should have been

permitted to take additional discovery. The first two issues

are intertwined.

Courts have, in the employment law context,

commonly upheld releases given in exchange for additional

benefits. Such releases provide a means of voluntary

resolution of potential and actual legal disputes, and mete

out a type of industrial justice. Thus, releases of past

claims have been honored under the laws prohibiting race and

gender discrimination. Warnebold v. Union Pac. R.R., 963 

F.2d 222, 223-24 (8th Cir. 1992); cf. Alexander v. Gardner- 

Denver Co., 415 U.S. 36, 52 (1974). Such releases have also 

-6- 6

been honored under the ADEA, which prohibits age

discrimination in employment, e.g., Pierce v. Atchison T. & 

S.F. Ry. Co., -- F.3d -- (7th Cir. Mar. 27, 1997), as well as 

under ERISA, e.g., Smart v. Gillette Co. Long-Term Disability 

Plan, 70 F.3d 173, 181 (1st Cir. 1995); Rodriguez-Abreu v. 

Chase Manhattan Bank, N.A., 986 F.2d 580, 587 (1st Cir. 

1993).

Where Congress has wanted to insure particular

protections for the employees in the procedures for obtaining

releases, it has done so, for example in the Older Workers

Benefits Protection Act amendments to the ADEA. 29 U.S.C.

626(f). No such special procedures are set forth in the

ADA.

The protection Congress wished to afford to

disabled workers is consistent, we believe, with permitting

those workers to resolve their claims by executing a release

in exchange for benefits they would not otherwise receive.

The ADA clearly encourages private resolution of employment

disputes, such as by requiring that employers attempt to make

reasonable accommodations and that the EEOC try to settle

disputes informally. See, e.g., Hodges, Mediation and the 

Americans with Disabilities Act, 30 Ga. L. Rev. 431, 437 

(1996). The ADA also expressly provides that its enforcement

procedures shall be the same as those for Title VII, 42

U.S.C. 12117(a), and releases have long been accepted in

-7- 7

that context. In addition, although claims concerning

employment arise under Title I of the ADA, it is noteworthy

that the EEOC Regulations under Title III of the ADA (public

accommodations) expressly provide for settlement of disputes.

28 C.F.R. 36.506.

Certainly there is nothing in the ADA prohibiting

such releases. Indeed, as the district court pointed out,

the report of the conference committee on the ADA evinces an

intent to permit individuals to settle or waive claims under

the ADA by express, voluntary agreement. H.R. Rep. No. 101-

596 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 598. 

Prohibiting such waivers under the ADA on policy grounds

arguably would display the same stereotyping and patronizing

attitudes toward the disabled which Congress hoped to remedy

in enacting the ADA. We conclude that such releases are

permissible under the ADA, and turn to whether the release at

issue here was valid.

Waiver and release are affirmative defenses on

which the employer bears the burden. Fed. R. Civ. P. 8(c);

see Long v. Sears Roebuck & Co., 105 F.3d 1529, 1543 (3d Cir. 

1997). At a minimum, judicial review of such waivers and

releases has been designed to ensure that they are "knowing

and voluntary." Smart, 70 F.3d at 181. That analysis 

necessitates some focus on the rights being waived and the

congressional intention to protect such rights. This court

-8- 8

has endorsed a "totality of circumstances" approach to

determining the validity of the waiver. Id. We have found 

helpful, but not exclusive, a set of six factors identified

by the Second Circuit in Finz v. Schlesinger, 957 F.2d 78, 82 

(2d Cir. 1992).4

And yet, a challenge to a release by a person who

asserted to the employer that he was disabled at the time of

execution of the release may, on particular facts, warrant

heightened judicial scrutiny.5 While certain claimed

disabilities may inherently raise a question about whether

the employee has the capacity to give a knowing and voluntary

waiver, that is not the case here. It is not enough for an

employee simply to assert that he was disabled at the time he

executed the release and the employer knew it. The

definition in the ADA of "disability" covers three

categories, including the mere perception that someone is

disabled. 42 U.S.C. 12102(2); Soileau v. Guilford of 

Maine, Inc., 105 F.3d 12, 15 (1st Cir. 1997). Nor is it 

 

4. The six factors are: (1) plaintiff's education and
business sophistication; (2) the respective roles of employer
and employee in determining the provisions of the waiver; (3)
the clarity of the agreement; (4) the time plaintiff had to
study the agreement; (5) whether plaintiff had independent
advice, such as that of counsel; and (6) the consideration
for the waiver. Smart, 70 F.3d at 181 n.3. 

5. Unlike waiver of pension benefits under ERISA, waiver of
welfare benefits such as those at issue here are not, as a
general matter, subject to heightened scrutiny. Rodriguez- 
Abreu, 986 F.2d at 587. 

-9- 9

enough to assert that the nature of the disability was

psychiatric. Not all disabilities and not all psychiatric

disabilities inherently involve a question about capacity to 

act knowingly and voluntarily. Cf. United States v. 

Schneider, -- F.3d -- (1st Cir. Apr. 15, 1997). 

Thus, the operative question is whether there is a

genuine issue as to whether Rivera had the capacity to

execute the release knowingly and voluntarily. Summary

judgment is appropriate where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). Here, the only sworn evidence as to Rivera's

condition and its effects is the statement in his own

affidavit: "I was very depressed because I could no longer

work; anxious and confused and was under psychiatric

treatment." Rivera failed to submit an affidavit from his

treating psychiatrist or from any other medical expert.6 The

court was left with no competent medical evidence going to

 

6. Rivera did submit a case summary prepared by his treating
psychiatrist. However, as defendants pointed out in their
reply memorandum in support of their motion for summary
judgment, this document constituted inadmissible hearsay. It
was not supported by an accompanying affidavit. Plaintiff
failed to remedy this evidentiary infirmity even after it was
brought to his attention in this manner.

-10- 10

his capacity to execute the release. Cf. Garside v. Osco 

Drug, Inc., 895 F.2d 46, 49-50 (1st Cir. 1990). 

Rivera did submit the decision of the

administrative law judge who presided over his collateral

action seeking disability benefits under the Social Security

Act. The administrative law judge found that Rivera suffered

from dysthymia as well as post-traumatic stress disorder.

Even giving these findings some evidentiary weight they are

insufficient, without more, to create a genuine issue of fact

as to Rivera's mental capacity. Mere evidence of diagnostic

labels without content tying them to capacity to give valid

consent is inadequate to create an issue as to the

consequences of the disorders on an individual's capacity to

give valid consent.

Rivera never states in his affidavit that his

condition was such that he could not give voluntary and

knowing consent. The social security judge's decision says

nothing on these points. And, as we said, there was no

affidavit from any doctor. Furthermore, despite his

diagnosed dysthymia and post-traumatic stress disorder,

during this period he was actively pursuing his disability

claim and did not tell his employer and its insurer that he

lacked the capacity to do so. On this record, there is no

evidence sufficient to establish lack of capacity. In

reaching this conclusion, we say nothing about the outcome in

-11- 11

a case involving similar facts in which the plaintiff put on

competent medical evidence.

We consider the remaining circumstances. Rivera

had 42 days to examine the Agreement,7 discuss it with

whomever he chose and ask questions before he signed it.

Rivera attempts to raise a dispute about when he actually

received the Agreement. However, the employer filed with its

summary judgment papers a receipt for the release executed by

Rivera. Rivera has not fairly met this evidence. At most,

his affidavit says that he did not recall if he received the

release then. That is insufficient to create a genuine issue

of fact. See Ayer v. United States, 902 F.2d 1038, 1045 (1st 

Cir. 1990); cf. Perez de la Cruz v. Crowley Towing & Transp. 

Co., 807 F.2d 1084, 1086-87 (1st Cir. 1986). 

The district court sensitively analyzed the

totality of the circumstances here, commenting on Rivera's

lack of business sophistication. The court noted that Rivera

was given the Agreement and release along with a letter of

termination, which suggested there was little room for

negotiation. However, as the district court pointed out, the

language of the release is clear and unmistakable: the

waiver clause expressly mentions the ADA and states that all

 

7. The Agreement was internally inconsistent in that it
provided for at least a 45-day period for examining the
document but apparently expired 44 days after the date it was
issued. We need not reach this issue, however, as plaintiff
never claimed that the Agreement was invalid for this reason.

-12- 12

claims for disability are released. The district court

concluded that Rivera's sense that he was treated unjustly in

this situation does not mean that his signing the Agreement

was not voluntary or knowing.

Rivera argues that the district court was required

to rule first on the merits of his liability claims against

the employer before reaching the issue of waiver. This

argument has the matter exactly backwards. Even if Rivera

had valid claims under the ADA and other statutes, he could

have waived those claims. It was both logical and efficient

to take up first the matter of waiver.

As for Rivera's argument that he was denied

discovery, it is too little and too late. Our review of the

district court's discovery-related decisions is for abuse of

discretion, and "[w]e will intervene in such matters only

upon a clear showing of manifest injustice." Mack v. Great 

Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989). 

Here, Rivera never argued to the district court that he

needed additional discovery before filing his opposition to

summary judgment; nor did he file an affidavit under Fed. R.

Civ. P. 56(f). Indeed, he filed a cross-motion for summary

judgment. Under these circumstances, there was no abuse of

discretion.

-13- 13

For these reasons, to the extent (if at all) that

Rivera's remaining non-ADA claims have been preserved, the

waiver and release are valid as to them.

Affirmed. 

-14- 14