Marilyn **KILEY,** Plaintiff,

v.

The **TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND,** Defendant.

**Civ. A. No. 92–11979–RCL.**

United States District Court, D. Massachusetts.

May 13, 1994.

---

Joseph A. Mac Ritchie, Quincy, MA, for plaintiff.

John O. Mirick, Joan O. Vorster, Mirick, O'Connell, De Mallie & Lougee, Worcester, MA, for defendant.

## ORDER

LINDSAY, District Judge.

Recommendation Approved.

*REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING ERISA STANDARD OF REVIEW (DOCKET ENTRY # 13)*

April 26, 1994

BOWLER, United States Magistrate Judge.

On December 10, 1993, defendant The Travelers Indemnity Company of Rhode Island ("Travelers") filed a motion for sum-

mary judgment seeking a determination of the standard of review applicable to this ERISA[1] action and, in the event the standard of review is an abuse of discretion standard, summary judgment on the merits. (Docket Entry # 13). Plaintiff Marilyn Kiley ("plaintiff") opposes summary judgment contending that a *de novo* standard of review applies. (Docket Entry # 22).

On February 7, 1994, this court held a hearing and took the motion for summary judgment (Docket Entry # 13) under advisement.

## BACKGROUND

This action concerns Travelers' denial of longterm disability benefits to plaintiff, a former employee of State Street Boston Corporation ("State Street") in Boston, Massachusetts. (Docket Entry ## 1 & 2, ¶¶ 4). Plaintiff participated in a group health plan ("the plan") underwritten and administered by Travelers through State Street.

Plaintiff originally filed this action in state court. Travelers petitioned to remove this action to the United States District Court for the District of Massachusetts. Plaintiff's original two count complaint sought relief under state law. On December 9, 1993, the district judge allowed Travelers' motion to strike the state court claims (Docket Entry # 9). In accordance with a Procedural Order issued by this court on March 25, 1994, plaintiff filed a motion for leave to amend her complaint in order to bring an action under ERISA.

The amended complaint alleges an action to recover benefits under 29 U.S.C. § 1132(a)(1)(B) ("section 1132(a)(1)(B)"). Plaintiff brings three counts under section 1132(a)(1)(B), to wit, a claim for benefits due, a claim to enforce her rights under the insurance policy at issue and a claim for future benefits. For purposes of summary judgment only, plaintiff does not dispute Travelers' statement of undisputed material facts. Solely with respect to plaintiff's motion for summary judgment, therefore, this court finds the following facts.

---

1. ERISA is an acronym for the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

In May 1989, plaintiff worked as an employee of State Street. As an employee of State Street, plaintiff was covered by the plan, a group insurance policy underwritten by Travelers. The plan provides longterm disability insurance to plan members.

Specifically, the plan grants disability income to employees who become totally disabled as a result of an accidental bodily injury or sickness. After the employee submits "due proof" of a disability to Travelers, Travelers determines whether the employee is in fact totally disabled. (Docket Entry # 15, Ex. A; Docket Entry # 17). The plan defines "total disability" as follows:

> The term "total disability" as used herein means the complete inability of an Employee to engage in any and every duty pertaining to any occupation or employment for wage or profit for which the Employee is or becomes reasonably qualified by training, education, or experience, except that during the first Twenty-four months only of absence from work because of disability the Employee shall be assumed to be totally disabled if because of disability he is unable (*as determined by the Company*) to perform the normal duties of his regular occupation for any employer and is not engaged in any other occupation or employment for wage or profit.

(Docket Entry # 15, Ex. A) (emphasis added).

In other words, the plan initially provides benefits during the first 24 months if an employee is unable to perform the duties of his regular occupation, a so called "occupational disability" provision. After the expiration of 24 months, the plan provides benefits only if an employee is unable to perform any job for which he is qualified, a so called "general disability" provision. *See DeWitt v. State Farm Insurance Company Retirement Plan*, 905 F.2d 798, 802 (4th Cir.1990) (explaining distinction between "occupational" and "general" disability policies). The instant litigation concerns the occupational disability provision and whether Travelers had the discretion to determine whether plaintiff was occupationally disabled in May 1989.

The summary plan description dispensed to State Street employees tracks the language of the plan. It defines "total disability" as follows:

## TOTAL DISABILITY

1. During the Qualifying Disability Period Plus first 24 months only of absence from work because of disability you will be assumed to be totally disabled if because of disability you are unable (*as determined by The Travelers*) to perform the normal duties of your regular occupation for any employer and you are not engaged in any other occupation or employment for wage or profit, and

2. after the period of time in 1. above you will be considered totally disabled....

(Docket Entry # 15, Ex. B) (emphasis added).

Under the plan and as explained in the summary plan description, "proof of loss on which a claim is based must be furnished" to Travelers within 90 days "after the termination of the first monthly period of benefits following the expiration of the qualifying disability period." (Docket Entry # 15, Ex. B). The plan and the summary plan description state that, "Subsequent written proof of the continuance of disability must be furnished to The Travelers at such intervals as The Travelers may reasonably require." Finally, Travelers has the right to examine an employee at Travelers' expense "when and so often as it may reasonably require." (Docket Entry # 15, Ex. A & B).

On October 28, 1987, plaintiff purportedly became disabled because of a posttraumatic seizure disorder. (Docket Entry # 17). Similarly, the Social Security Administration determined that plaintiff became disabled on October 28, 1987. (Docket Entry ## 1 & 2, ¶¶ 11).

Travelers initially approved plaintiff's claim for disability benefits and began paying such benefits on April 25, 1988. Travelers based its approval, in part, on a March 24, 1988 letter from plaintiff's physician, Dr. John F. Mahoney ("Dr. Mahoney").

As stated in the one page letter, Dr. Mahoney had treated plaintiff since 1985 for a posttraumatic stress disorder and had per-

formed a number of electroencephalograms ("EEGs"). Dr. Mahoney noted "some abnormalities by EEG that are consistent with an underlying seizure disorder, although specific paroxysmal focus has not been appreciated." He suggested that plaintiff take time off from work because, in his opinion, her work schedule resulted in "a good deal of stress" which triggered the "seizure situation." In conclusion, Dr. Mahoney diagnosed plaintiff as experiencing posttraumatic seizure disorder and opined that she was "totally disabled" at the present time because of her "ongoing neurological situation."[2] (Docket Entry # 16, Ex. A).

By letter dated August 25, 1988, Dr. Mahoney advised Travelers that plaintiff was being seen every six to eight weeks for the seizure disorder. Dr. Mahoney described plaintiff as experiencing "partial complex seizures with episodes of absence and probable prior episodes of major motor seizure activity." Plaintiff's medications included two anticonvulsants and a mild tranquilizer. Dr. Mahoney surmised that plaintiff's seizure condition caused her "a good deal of anxiety and stress [and] it has severely affected her life to the point that she is no longer able to work at the job that she held for quite some time (State Street Bank) and at the same time is unable to take part in any other form of employment." After describing additional problems with her neck, Dr. Mahoney stated that plaintiff was, in his opinion, totally disabled and "also permanently disabled." (Docket Entry # 16, Ex. A).

In January 1989 and in accordance with the terms of the plan, Travelers arranged for a physician to examine plaintiff and to assess her physical condition. Dr. Paul S. Blachman ("Dr. Blachman") examined plaintiff and wrote a detailed, three page letter to Travelers on January 9, 1989. Therein, he stated that he had examined plaintiff four times in 1982 and once in 1983. He had conducted an EEG of plaintiff in 1982 which showed normal results. Dr. Blachman's "feeling" after examining plaintiff in March 1982 was that plaintiff experienced "mild anxiety or hyperventilation."[3] After summarizing plaintiff's history of medications with Dr. Mahoney and the substance of Dr. Mahoney's descriptions of "some abnormalities by EEG," Dr. Blachman recounted the results of his physical examination of plaintiff. (Docket Entry # 16, Ex. B).

Dr. Blachman concluded as follows:

I am doubtful of the diagnosis of seizure disorder. The episodes again [apparently referring to his 1982 prognosis] seem most consistent with anxiety. It would be helpful to review the actual [EEGs] for which Dr. Mahoney made arrangements. I would also advise that plaintiff have a repeat [EEG] following 24 hours of sleep deprivation. If this is all right with you [i.e., Travelers], I will make arrangements for this to be done. In the interim, [plaintiff] ought to stay on her current medications; but if the [EEG] does not show any paroxysmal or epileptiform activity and if the previous [EEG] did not convincingly show an irritative focus, it would be my recommendation to taper and discontinue these medications.

(Docket Entry # 16, Ex. B).

On January 17, 1989, plaintiff had a 24 hour sleep deprived EEG. Dr. Blachman's EEG report stated that, similar to the March 1982 EEG, the January 1989 EEG was normal. (Docket Entry # 16, Ex. C).

In a four sentence letter dated February 13, 1989, Dr. Blachman informed Travelers that he did "not feel that [plaintiff] has a seizure disorder, and I feel that her symptoms are most consistent with anxiety. I recommend that [plaintiff] gradually be tapered off the Tegretol and Deakote. I do not feel she requires any specific limitations or restrictions." (Docket Entry # 16, Ex. C).

---

**2.** The March 24, 1988 letter is not hearsay inasmuch as this court considers the letter and similar letters thereafter not for the truth of the statements therein but for the purpose of determining the bases and the propriety for Travelers' decision to discontinue plaintiff's disability benefits.

**3.** Plaintiff attempts to discredit Dr. Blachman's opinion by arguing that Dr. Blachman desired to be consistent with his March 1982 diagnosis of anxiety and was therefore unable to give an independent or neutral assessment of plaintiff's condition in January 1989. (Docket Entry # 22).

By letter dated March 1, 1989, Travelers sent Dr. Mahoney a copy of Dr. Blachman's report. The letter requested that Dr. Mahoney comment within 30 days on Dr. Blachman's assessment that plaintiff was experiencing anxiety rather than a seizure disorder. (Docket Entry # 16, Ex. C; Docket Entry # 17).

Travelers did not receive a response to its March 1, 1989 letter from Dr. Mahoney. By letter dated May 12, 1989, Travelers discontinued plaintiff's disability benefits. The May 12, 1989 letter cited to the pertinent plan language defining the term "total disability" and noted the evidence relied upon by Travelers. It then informed plaintiff that she no longer satisfied the plan's definition of total disability because she "had an entirely normal neurological examination, a normal [EEG], and that you do not require any specific limitation." (Docket Entry # 16, Ex. E; Docket Entry # 17).

After Travelers responded to plaintiff's appeal of its decision to discontinue benefits, the instant litigation ensued.

## DISCUSSION

Travelers moves for summary judgment. (Docket Entry # 18). The standard for summary judgment in ERISA litigation is synonymous with the standard employed in other civil actions. *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 583 (1st Cir.1993). Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in favor of plaintiff, the nonmoving party. *Space Master International, Inc. v. City of Worcester*, 940 F.2d 16 (1st Cir.1991); *Price v. General Motors Corporation*, 931 F.2d 162 (1st Cir.1991).

This court finds that the group policy at issue is an employee benefit plan within the meaning of ERISA. *See* 29 U.S.C. § 1002(1) & (3); *see also Wickman v. Northwestern Mutual Life Insurance Company*, 908 F.2d 1077, 1082–1083 (1st Cir.), *cert. denied*, 498

U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990).

The parties initially dispute what standard of review to evaluate Travelers' decision to discontinue benefits. Travelers contends that this court should employ an abuse of discretion standard. (Docket Entry # 14). Plaintiff submits that this court should review Travelers' actions *de novo*. (Docket Entry # 22).

■ In a denial of benefits action under section 1132(a)(1)(B), this court reviews "claims *de novo*, 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan.'" *Bellino v. Schlumberger Technologies, Inc.*, 944 F.2d 26, 29 (1st Cir.1991) (quoting *Firestone v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989)); *accord Allen v. Adage, Inc.*, 967 F.2d 695, 697 (1st Cir.1992). Stated otherwise, a deferential standard of review is appropriate in the event Travelers has discretionary authority under the plan. *See Curtis v. Noel*, 877 F.2d 159, 161 (1st Cir.1989) (citing *Firestone* ). The issue is therefore whether the plan provided Travelers with discretionary authority and the scope of such discretion, if any.

The language of the plan fails to use the word "discretion" or unequivocally designate Travelers as the fiduciary or administrator with the final authority to determine eligibility for benefits. *Firestone*, however, does not require that a plan contain the word "discretion" or employ alternate "magic words" in order to endow an administrator with discretionary authority. *Wildbur v. ARCO Chemical Company*, 974 F.2d 631, 637 (5th Cir. 1992) (no "magic words" required to trigger deferential standard of review); *McLain v. Metropolitan Life Insurance Company*, 820 F.Supp. 169, 174 (D.N.J.1993). In general, what is required is explicit language in the plan giving Travelers the discretionary authority to determine whether an employee is occupationally disabled.[4]

---

4. The Third Circuit expounds that, "Discretionary powers may be implied by a plan's terms even if not granted expressly." *Luby v. Team-*

sters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1180 (3rd Cir.1991).

Courts have found limited discretionary authority in clauses defining disability "on the basis of medical evidence satisfactory to the Insurance Company." *Miller v. Metropolitan Life Insurance Company,* 925 F.2d 979, 983 (6th Cir.1991). For example, in *Bali v. Blue Cross and Blue Shield Association,* 873 F.2d 1043, 1047 (7th Cir.1989), the court found discretionary authority to determine the type of evidence required to prove disability but did not find discretionary authority to determine the ultimate question of disability under a provision which defined disability as follows:

> "Disabled" means that a Participant is, determined on the basis of medical evidence satisfactory to the Committee, wholly prevented, by reason of mental or physical disability, from engaging in any occupation. . . .

*Bali v. Blue Cross and Blue Shield Association,* 873 F.2d at 1047. The pertinent language in this case, however, is broader inasmuch as it does not limit Travelers' determination to the medical evidence.

The Eleventh Circuit deemed that language in a plan which gave the administrator the "final and conclusive" authority to make reasonable determinations gave the administrator discretionary authority. *Jett v. Blue Cross and Blue Shield,* 890 F.2d 1137, 1139 (11th Cir.1989). Similarly, language giving an administrator "full power to construe the provision" of a plan bestows discretionary authority. *See Masella v. Blue Cross & Blue Shield of Connecticut,* 936 F.2d 98, 103 (2d Cir.1991) (collecting cases); *see also DeWitt v. State Farm Insurance Company Retirement Plan,* 905 F.2d at 801 (administrator had discretion through language giving him binding "power . . . to make all determinations that the plan requires for its administration, and to construe and interpret the plan").

█ Travelers primarily relies on the language defining the term "total disability." As noted above, this language states that "the Employee shall be assumed to be totally disabled if because of disability he is unable (as determined by the Company) to perform the normal duties of his regular occupation." (Docket Entry # 15, Ex. A). Plaintiff urges

this court to limit its construction of the above language and find that Travelers' discretion extends only to determining whether the employee is unable to perform the normal duties of his regular occupation during the first 24 months.

This court, however, fails to see the distinction between determining that an employee is totally disabled in the first 24 months and determining that an employee is unable to perform the normal duties of his regular occupation in the first 24 months. The two decisions are synonymous and inevitably lead to the same result. The plan states that an employee *"shall* [emphasis added] be assumed to be totally disabled" if he is unable to perform the normal duties of his regular occupation.

Plaintiff implicitly acknowledges (Docket Entry # 22, p. 4) that the language confers discretion on Travelers to determine whether an employee is unable to perform the normal duties of his regular occupation during the first 24 months of an alleged disability. In light of this discretion, it inevitably follows that Travelers had the discretion to determine whether an employee was totally disabled in the first 24 months.

Plaintiff also emphasizes that the words "as determined by the Company" do not immediately follow the word "disability" and that because Travelers drafted the policy it should be construed against Travelers. (Docket Entry # 22, p. 4). Federal substantive law governs the interpretation of an ERISA insurance plan. *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d at 585; *see Allen v. Adage, Inc.,* 967 F.2d 695, 698 (1st Cir.1992) (trust and contract principles apply when interpreting ERISA plans). Employing the doctrine of *"contra proferentum"* is generally appropriate only in the event of an ambiguity in the terms of an ERISA insurance policy. *See Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d at 586; *Allen v. Adage, Inc.,* 967 F.2d at 701; *see also Wickman v. Northwestern Mutual Life Insurance Company,* 908 F.2d at 1084.

The fact that the words "as determined by the Company" do not *immediately* follow the

word "disability" does not create an ambiguity. The language is neither inconsistent on its face and, as explained above, the language does not allow for reasonable but differing interpretations. *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d at 586 (ambiguity exists if terms are facially inconsistent or capable of reasonable albeit different interpretations). The language at issue creates one interpretation, i.e., that Travelers had the discretion to determine whether an employee was unable to perform the normal duties of his regular occupation and therefore had the discretion to determine whether the employee was totally disabled in the first 24 months. Nonambiguous terms or language in an ERISA insurance plan must be given "their usual and ordinary meaning." *Pizzuti v. Polaroid Corporation*, 985 F.2d 13, 14 (1st Cir.1993); *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d at 586 ("[c]ontract language in an ERISA action is to be given its plain meaning"); *Wickman v. Northwestern Mutual Life Insurance Company*, 908 F.2d at 1084 (terms in ERISA insurance plan "must be given their plain meanings"); *see Burnham v. Guardian Life Insurance Co. of America*, 873 F.2d 486, 489 (1st Cir.1989) ("straightforward language in an ERISA-regulated insurance policy should be given its natural meaning"). Common sense principles of contract interpretation also dictate that the words in the sentence regarding occupational disability and the paragraph itself be read as a whole. *See Burnham v. Guardian Life Insurance Co. of America*, 873 F.2d at 489 (federal substantive law includes "common-sense canons of contract interpretation").

Finally, while Travelers' discretion is limited, it extends to the exact provision at issue in this case, i.e., whether plaintiff was totally disabled within the meaning of the plan in May 1989. *See Jader v. Principal Mutual Life Insurance Company*, 723 F.Supp. 1338, 1341 (D.Minn.1989) (noting that although discretion afforded fiduciary was limited to construing one provision, it was the provision at issue). Unlike the language relied on by the insurance company in *Ring v. Confederation Life Insurance Company*, 751 F.Supp. 296, 298 (D.Mass.1990), the discretionary language is not located in a parallel section.

The language conferring the discretion is located in the exact section at issue in this case.

Accordingly, this court will utilize a deferential standard of review in assessing whether Travelers properly determined that plaintiff was no longer disabled in May 1989. In the event this court uses a deferential standard of review, Travelers moves for summary judgment on the grounds that its decision was entirely rational and made in good faith. (Docket Entry # 14). Plaintiff disputes this assertion. (Docket Entry # 22).

While various circuit courts use slightly different language when stating the deferential standard of review, the First Circuit generally asks whether the decision of the administrator or fiduciary endowed with the discretionary authority was arbitrary and capricious. *Sandoval v. Aetna Life Insurance & Casualty Insurance Company*, 967 F.2d 377, 380 n. 4 (10th Cir.1992) (collecting cases and noting that First Circuit quotes rule as arbitrary and capricious); *see Diaz v. Seafarers International Union*, 13 F.3d 454 (1st Cir.1994) (arbitrary and capricious standard employed); *Mahoney v. Board of Trustees*, 973 F.2d 968, 970 (1st Cir.1992) (arbitrary and capricious standard used in ERISA breach of fiduciary action); *Curtis v. Noel*, 877 F.2d at 161–162 (finding administrator's discretionary interpretation of plan "fully justified"); *see also DePina v. General Dynamics Corporation*, 674 F.Supp. 46, 51 (D.Mass.1987) (collecting pre-*Firestone* cases and analyzing arbitrary and capricious standard of review).

■ On summary judgment, the issue is therefore whether Travelers' decision was not arbitrary and capricious as a matter of law. Given the factual evidence in the summary judgment record, a reasonable jury could find in favor of plaintiff. *See Ring v. Confederation Life Insurance Company*, 751 F.Supp. at 296 (finding question of fact given differing physician opinions albeit in context of *de novo* review); *see generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (dispute as to material fact is genuine if evidence

is such that "reasonable jury could return a verdict for the nonmoving party").

In deciding that plaintiff was no longer disabled, Travelers had before it Dr. Mahoney's August 1988 letter. This letter, which predates Travelers' decision by less than one year, emphatically states that plaintiff was not only totally disabled but also permanently disabled.

Although Travelers had Dr. Blachman's letter of January 1989, this letter fails to explicitly find that plaintiff could not perform the normal duties of her regular occupation. Rather, Dr. Blachman stated that anxiety "seems" to cause plaintiff's episodes and he doubted the diagnosis of seizure disorder. There is also no indication that Travelers consulted a vocational expert in order to better assess plaintiff's ability to perform her regular occupation.

Dr. Blachman's February 1989 letter is cryptic and does not explicitly state that plaintiff cannot perform her occupational duties. The letter merely notes that plaintiff's symptoms are consistent with anxiety and that Dr. Blachman does not "feel that [plaintiff] has a seizure disorder" or that "she requires any specific limitations or restrictions."

While not determinative on the issue of disability, this court may consider the Social Security Administration's decision that a claimant was or was not disabled.[5] *Kirwan v. Marriott Corporation*, 10 F.3d 784, 790 n. 32 (11th Cir.1994); *see also Pierce v. American Waterworks Company, Inc.*, 683 F.Supp. 996, 1000–1001 (W.D.Pa.1988) (relying, in part, on Administrative Law Judge's decision that claimant was totally disabled in finding that administrator acted in arbitrary and capricious manner).

Reasonable minds could differ as to whether Travelers acted in an arbitrary and capricious manner in May 1989. Summary judgment is therefore inappropriate.

As a subsidiary issue, Travelers contends that, in the event this court does not enter summary judgment, it should limit the evidence presented at trial to the evidence before Travelers, i.e., that contained in the administrative record. (Docket Entry # 14).

■ Courts are split as to whether to consider evidence in addition to that presented to an ERISA plan administrator. The First Circuit has not yet spoken on whether a court should confine itself to reviewing the record as it existed before the plan administrator. Nor has the Second Circuit, *see Novak v. TRW, Inc.*, 822 F.Supp. 963, 970 (E.D.N.Y.1993); *see also Masella v. Blue Cross & Blue Shield of Connecticut*, 936 F.2d 98, 104 (2d Cir.1991) (finding it unnecessary to resolve issue), or the Eighth Circuit, *Davidson v. Prudential Insurance Company of America*, 953 F.2d 1093, 1095 (8th Cir. 1992), squarely addressed this issue.

A number of other circuit courts hold that a court "may consider only the evidence available to the administrator at the time the final decision was made." *Miller v. Metropolitan Life Insurance Company*, 925 F.2d 979, 986 (6th Cir.1991); *accord Sandoval v. Aetna Life Insurance & Casualty Insurance Company*, 967 F.2d 377, 380–381 (10th Cir. 1992) (in determining whether denial of benefits was arbitrary and capricious, district court considers "only the arguments and evidence before the administrator"); *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990) (in *de novo* review, district court considers the record as it existed before administrator or fiduciary). Other courts, particularly in the context of a *de novo* review, permit a court to consider additional evidence. *See Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1184–1185 (3rd Cir.1991) (when conducting *de novo* review, court is not limited to evidence before administrator); *Moon v. American Home Assurance Company*, 888 F.2d 86, 89 (11th Cir.1989).[6]

Where, as here, this court will conduct a review under an arbitrary and capricious

---

5. While the Social Security Administration's decision is not contained in the summary judgment record, Travelers admits that the Social Security Administration determined that plaintiff became disabled albeit in October 1987. (Docket Entry ## 1 & 2, ¶¶ 11). Travelers also notes that it reviewed the "entire file including the medical

from the Social Security Independent Medical Examiner." (Docket Entry # 16, Ex. F).

6. The Fourth Circuit generally limits *de novo* review to the evidentiary record before the plan administrator but permits additional evidence in

standard, limiting the record to the evidence before Travelers is particularly appropriate. *See Leahy v. The Bon, Inc.,* 801 F.Supp. 529, 539 (D.Utah 1992); *cf. Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d at 1184 (citing *Moon,* 888 F.2d at 89, and noting that limiting administrative record to facts before plan administrator contrary to concept of *de novo* review); *Doe v. United States,* 821 F.2d 694, 697 (D.C.Cir. 1987) (conducting *"de novo"* review under Privacy Act "means here, as it ordinarily does," conducting independent review and not limiting inquiry to administrative record). Following the lead of the third, fourth, sixth, tenth and elevenths circuits, at least in the context of applying a deferential standard of review, this court will limit the record to the facts before Travelers absent further guidance by the First Circuit.

## CONCLUSION

In accordance with the foregoing discussion, Travelers' motion for summary judgment (Docket Entry # 13) is **ALLOWED** in part and **DENIED** in part. This court will employ a deferential standard of review. Given the record, however, summary judgment is inappropriate.

the event "exceptional circumstances" exist. *Quesinberry v. Life Insurance Company of North America,* 987 F.2d 1017, 1026–1027 (4th Cir. 1993).