**Anna M. GENTILE, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. 95–10222–NMG.**

United States District Court, D. Massachusetts.

Jan. 8, 1997.

---

**6.** Plaintiff's claim for punitive damages is also dismissed because no predicate tort remains in the case.

Richard A. Mulhearn, Worcester, MA, for plaintiff.

Robert V. Deiana, Worcester, MA, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff, Anna Gentile ("Gentile"), brought this suit against her employer, John Hancock Mutual Life Insurance Company ("Hancock"), for Long Term Disability benefits she claims are due to her under the company's employee benefits plan ("the Plan"). The suit is brought under 29 U.S.C. § 1132(a)(1)(B) which permits an employee to challenge benefit eligibility determinations. Hancock denies that Gentile is totally disabled as that term of art is defined by the Plan and denies her entitlement to such benefits. The Plan is an employee welfare benefit plan within the meaning of and subject to the Employment Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et seq.

Pending before the Court is defendant's motion for summary judgment on the grounds that plaintiff has submitted no objective medical evidence that she is disabled. Defendant requests in the alternative, if summary judgment is denied, that the arbitrary and capricious standard of review be applied at trial on the grounds that the Plan contract gives the company the requisite discretion to avoid application of *de novo* review. Also pending before the Court is defendant's motion to strike plaintiff's claim for a jury trial.

## I. BACKGROUND

The following facts are recited in the light most favorable to the nonmoving party, plaintiff Gentile. *Winnacunnet Cooperative School District v. National Union Fire Ins. Co. of Pittsburgh, PA,* 84 F.3d 32, 35 (1st Cir.1996). Gentile is a 60–year–old woman who had worked for Hancock since 1954. From 1983 until the time of her injury, Gentile had been an Office Supervisor in Hancock's Woonsocket, Rhode Island office. On

January 4, 1988, plaintiff was injured during the course of her employment by a fall on ice. She suffered injuries to her neck, back, left shoulder and left leg and came under active medical care resulting in diagnoses of sciatica and cervical sprain as well as other multiple sprains, strains and contusions. Subsequently, Gentile developed psychological problems stemming from her injuries and became prone to falling.

Plaintiff twice attempted to return to work for Hancock after the 1988 injury, once in February, 1988 when she returned for approximately two months and again in June, 1988 when she worked for approximately six weeks before leaving finally on July 11, 1988. Plaintiff has not worked since. She was entitled to, and received, salary continuation benefits, for the disability resulting from her fall, until January 4, 1991, as well as worker's compensation benefits which she received until April 17, 1992.

Gentile submitted a claim to Hancock for Long Term Disability ("LTD") benefits in November, 1993. A month later, Hancock arranged and paid for an "Independent Medical Examination" ("IME") of Gentile which resulted in a determination that Gentile was able to perform her previous job with her physical limitations. During its review of Gentile's claims, Hancock received and considered records from an examination of Gentile performed with respect to her Worker's Compensation claim which also concluded that she was able to return to her job.

Several months before filing her claim for LTD benefits with Hancock, a Social Security Administration ("SSA") Administrative Law Judge determined that Gentile was "disabled from any substantial gainful activity." In connection with those proceedings, Gentile was examined by both a physician and a psychiatrist who confirmed the findings of disability made by Gentile's treating physicians.

On July 1, 1994, Hancock approved Gentile's LTD benefits claim effective January 5, 1991. Thirteen days later, Hancock notified Gentile that her LTD benefits would not be paid for time accruing after April 17, 1992 because there was no objective medical documentation to substantiate total disability be-yond that date. In that letter from Hancock there was no mention of the findings of Gentile's doctors or those of the SSA. Gentile appealed that denial, submitting further medical reports from her treating physicians, but, on November 16, 1994, Hancock denied the appeal.

The Master Plan under which Gentile claims benefits states that:

Totally disabled means:

1) In order to determine when you start a continuous period of total disability, and for the first 36 months (60 months for Marketing Representatives and Ford Group Office Clerical employees) of such period, only such incapacity, as determined by the Company, and which is due to a physical or mental impairment which keeps you from doing all the essential duties of your occupation; and

(2) after the first 36 months (60 months for Marketing Representatives and Ford Group Office Clerical employees) period and for the rest of such continuous period of total disability, such incapacity which is due to a physical or mental impairment, which keeps you from doing the essential duties of any occupation or employment for which you are qualified by education, training or experience.

Defendant's Exhibit A, p. 3. The Summary Plan Description reads as follows:

The Own/Any Occupation Rule

During the first 36 months after your disability begins (including your Salary Continuance benefit period), you are considered *totally disabled* under this coverage if you are unable to perform all the essential duties of your regular job with the company.

After that time, you are considered *totally disabled* if you are unable to perform any gainful job that you're qualified for—by reason of your education, training or experience.

Defendant's Exhibit B, p. 6 (emphasis in the original).

Hancock is the employer, plan administrator and plan insurer. It is also the insurer with regard to pension benefits for Gentile.

Years of service counted toward calculation of pension benefits include time spent receiving LTD benefits.

Defendant has moved for summary judgment or, in the alternative, for this Court to review its denial of benefits under an arbitrary and capricious standard.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery, and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most hospitable to the non-moving parties and indulge all reasonable inferences in their favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993).

If the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). The nonmovant may not, however, rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56(e).

### B. Absence of Entire Administrative Record

█ Hancock has moved for summary judgment on the grounds that Gentile has failed to submit objective medical evidence to support her claim that she was totally disabled. Gentile asserts that the motion must be denied because the record before the Court, as submitted by Hancock, does not contain the entire administrative record regarding its review and denial of the claim or Gentile's appeal thereof.

While Gentile cites no case law expressly holding that the full administrative record is required for review by the Court, those cases which discuss judicial review of a denied benefit under ERISA uniformly assume that the full administrative record forms the basis of such a review, regardless of the standard of review applied. *See e.g. Jorstad v. Connecticut General Life Ins. Co.*, 844 F.Supp. 46, 55 (D.Mass.1994). Contrary to the case at hand, this issue typically manifests itself when a claimant seeks to submit to the Court information which was not available to the fiduciary when it denied the benefit. While the First Circuit has not yet spoken on the issue of whether to permit the Court to review additional information, in the circuits in which the issue has been addressed, the only options contemplated are judicial consideration of 1) a subsequently supplemented record or 2) the record as it existed before the administrator or fiduciary. *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991); *accord Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380–81 (10th Cir.1992); *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1184–85 (3rd Cir.1991); *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990).

According to Gentile, Hancock has not submitted to the Court the medical reports and records from her treating physicians, reports of diagnostic tests, records from the SSA's finding of disability or numerous other documents which comprised the full administrative record available to the fiduciary when it denied her claim. In the absence of the full record which is a prerequisite for this Court's review of the determination, summary judgment for Hancock will be denied.

### C. Genuine Issues of Material Fact

█ Even if the full administrative record were in this Court's possession and regardless of the standard of review employed, that record would still preclude a grant of summary judgment. Considering the plead-

ings in the light most favorable to the nonmoving party, Hancock has failed to demonstrate that there is no evidence in support of Gentile's case. While Hancock maintains that Gentile did not submit objective medical evidence to support her disability claim, Gentile had, in fact, submitted reports of her physician and psychiatrist stating that she is totally disabled along with the record from her SSA case which found that she was disabled from performing any substantial gainful activity. While an SSA determination of disability is not determinative on the issue of disability, it may be considered by the Court in its review of Hancock's determination. *Kiley v. Travelers Indemnity Co. of Rhode Island,* 853 F.Supp. 6, 13 (D.Mass.1994) (citing *Kirwan v. Marriott Corp.,* 10 F.3d 784, 790 n. 32 (11th Cir.1994)).

If the full record were considered, reasonable minds could differ as to whether Hancock acted in an arbitrary and capricious manner regarding its decision to deny Gentile's claim of disability. Hancock's motion for summary judgment will, therefore, be denied on the grounds that the full administrative record has not been submitted for the Court's review and that Hancock has failed to demonstrate that there is an absence of evidence to support Gentile's claim.

## III. DEFENDANT'S MOTION TO APPLY THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW.

### A. Interpreting the Plan's Language

Hancock has moved, in the alternative, for the Court to declare that this case should be reviewed under the arbitrary and capricious standard because the Master Schedule of the Plan grants Hancock discretionary authority to deny benefits claims. That discretion is allegedly sufficient to foreclose review under the *de novo* standard prescribed by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), for judicial review of the denial of ERISA benefits.

In *Firestone* the Supreme Court held that a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone,* 489 U.S. at 113, 109 S.Ct. at 955–56; *Curtis v. Noel,* 877 F.2d 159, 161 (1st Cir.1989). In finding this to be the standard, the Supreme Court relied heavily upon principles of trust law as well as the Congressional intent behind ERISA. *Id.*

To determine whether the Plan at issue grants the fiduciary or administrator the requisite discretionary power under *Firestone,* thereby foreclosing application of the *de novo* standard, the plain language of the instrument is controlling. *Firestone,* 489 U.S. at 112, 109 S.Ct. at 955. The First Circuit Court of Appeals has stated that:

> The *Firestone* rule has been interpreted to mean that a benefits plan must clearly grant discretionary authority to the administrator before decisions will be accorded the deferential, arbitrary and capricious, standard of review.

*Rodriguez–Abreu v. Chase Manhattan Bank,* 986 F.2d 580, 583 (1st Cir.1993). Moreover, interpretation of Plan terms and determination of the validity of claims are not, in themselves, discretionary functions. *Id.*

In order to meet the *Firestone* test, the Plan must, therefore, include a clear grant of discretionary authority. There is, however, some dispute over how specifically a grant of discretion must be worded. *Firestone* does not require the use of the word "discretion" or other "magic words" to endow an administrator with such authority. *Kiley v. Travelers Indemnity Co. of Rhode Island,* 853 F.Supp. 6, 10 (D.Mass.1994) (citing *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 637 (5th Cir.1992)).

The Third Circuit Court of Appeals has found that discretionary powers may be implied by the terms of a plan, even if not granted expressly. *Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d 1176, 1180 (3rd Cir.1991) (relying upon *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1187 (4th Cir.1989) which held that no "magic words" were required so long as the plan "on its face clearly grants such discretion"). On the other hand, the Fifth Circuit has specifi-

cally held that discretion cannot be implied and that plain language in the plan giving discretion is necessary, *Wildbur*, 974 F.2d at 637, and the Eleventh Circuit has found discretion in a Plan which provides that the Administrator's reasonable determinations shall be "final and conclusive." *Kiley*, 853 F.Supp. at 11 (citing *Jett v. Blue Cross and Blue Shield*, 890 F.2d 1137, 1139 (11th Cir. 1989)).

Some courts have expressed a concern that allowing general discretionary powers to constitute the requisite discretionary grant under *Firestone* will undermine the principles of ERISA to which the *Firestone* Court spoke. *Luby*, 944 F.2d at 1181; *Ring v. Confederation Life Insurance Co.*, 751 F.Supp. 296, 299 (D.Mass.1990). If a Plan's grant of general administrative power were construed to convey the requisite discretion the vast majority of ERISA claims would be heard under the arbitrary and capricious standard contrary to the *Firestone* Court's intent. The general rule would be swallowed up by the exception. *Id.*

The Fifth Circuit adopts a compromise procedure whereby there is no "linguistic template," but the Plan is read as a whole to determine if, in the court's judgment, it satisfies the *Firestone* criteria, i.e. manifestation of an expression of the administrator's authority to determine eligibility or to construe terms of the Plan. *Wildbur*, 974 F.2d at 637. An indication that such authority is independent (exercised only by the administrator) or final and conclusive compels a finding of sufficient discretionary authority. *Id.*

### 1. Absence of Enabling Language from the Subject Section of the Plan

In the Master Plan, Hancock has separated its definition of total disability into two paragraphs, one defining total disability during the first 36 months of incapacity and the other defining that term after the first 36 months. The first paragraph contains the phrase "as determined by the company" in its description of the kind of incapacity which qualifies as total disability. It is that phrase that Hancock contends confers upon it the requisite discretionary power. The second paragraph, however, conspicuously does *not*

include the subject phrase. Because the determination at issue is Gentile's eligibility for LTD benefits after the first 36 months of incapacity, the applicable definition is in paragraph (2). Although neither party addresses the issue, this Court deems it necessary to assess the significance of the absence of the phrase "as determined by the Company" from the section of the Master Plan under which Hancock considered Gentile's eligibility.

The use of the word "such" in the definition of long term disability ("such incapacity which is ...") may lead the reader to believe that "such" refers to the first paragraph and incorporates its use of the discretionary language. Given the identical use of the word "such" in the definition and time reference in both paragraphs and the fact that the purpose of each paragraph is to describe a separate definition of total disability, however, that interpretation is suspect. The fact that "such" is used in identical context in both paragraphs negates the contention that its use in the second incorporates the unused phrase. Rather, it suggests that the author of the document used "such" in each paragraph to refer to the incapacity, or time period, which immediately follows it.

Each paragraph is intended to define separately and independently, short term and long term total disability. Each paragraph is self-contained and sets forth the time frame for which it is applicable. Information applicable to both definitions (specifically, the parenthetical qualification that the time frame for some employees is 60 months) is restated in both paragraphs. The two definitions are not inter-dependent and the discretionary language is absent from the definition of disability applicable to Gentile's claim. The plain language of the Master Plan compels the conclusion that Hancock has reserved discretionary authority to determine eligibility during the first 36 months but not with respect to long term disability.

### 2. The Language by which Hancock Claims Discretion

Hancock claims that the wording "as determined by the Company", which is found in its Master Plan definition of "total disability",

grants it discretionary authority to make eligibility determinations pursuant to *Firestone*, thereby requiring this Court to review its denial of Gentile's benefits under an arbitrary and capricious standard rather than a *de novo* standard. Although no "magic words" are required in order for a company to grant itself the necessary discretion, on balance, the subject wording does not clearly convey independent and final discretion or constitute a binding contractual agreement to apply a narrower standard of review. Had Hancock intended to retain such discretion, as the drafter of the document, it could have done so expressly. For those reasons, Hancock does not have the requisite discretion in this case to warrant application of the arbitrary and capricious standard to its decision regarding Gentile's disability.

## B. Application of the *De Novo* Standard of Review

■ This Court concludes that in the subject plan the administrator's authority to determine eligibility or to construe its terms is insufficiently clear to override the principles of ERISA cited in *Firestone*. The phrase "as determined by the company" is not only missing from the paragraph under which the original determination of disability was made but also does not appear in the Summary Plan description ("SPD"). Even if this Court were to find that the purported authoritative phrase constitutes a clear grant of discretion, it would then need to determine whether the language of the Master Plan or the SPD controls. The SPD omits that Master Plan language and, generally, where there is a conflict between material language of the SPD and the Master Plan, the SPD controls. *Atwood v. Newmont Gold Co. Inc.*, 45 F.3d 1317, 1321 (9th Cir.1995) (stating that where the SPD differs materially from the terms of the plan, the SPD is controlling, but finding no material difference when discretionary language is omitted); *Aiken v. Policy Mgmt. Systems Corp.*, 13 F.3d 138, 140 (4th Cir.1993) (representations in SPD control over inconsistent provisions in official ERISA plan document); *Herrmann v. Cencom Cable Assocs. Inc.*, 978 F.2d 978, 983 (7th Cir.1992) (stating SPD prevails over the plan itself in the event of a conflict but finding no conflict); *Edwards v. State Farm Mutual Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988) (statements in SPD are binding and if such statements conflict with those in plan itself, summary shall govern).

■ Based upon all of these factors, this Court determines that Hancock's denial of benefits for Gentile is properly reviewed under a *de novo* standard.[1]

## IV. DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S JURY CLAIM

■ Gentile claims a jury trial and Hancock opposes that claim. Because this is an ERISA case, Hancock's opposition is well-founded and its motion to strike the jury claim will be allowed.

Although the First Circuit has not definitely decided the issue, the federal circuit courts which have addressed the issue have determined that a party is not entitled to a jury trial in an ERISA action. *Blake v. Unionmutual Stock Life Ins. Co. of America*, 906 F.2d 1525, 1526 (11th Cir.1990) (no right to a jury trial in an action under 29 U.S.C. § 1132(a)(1)(B)); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1357 (9th Cir.1984), *cert. denied* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (no independent constitutional or statutory right to jury trial in ERISA action); *Kirk v. Provident Life & Accident Ins. Co.*, 942 F.2d 504, 506 (8th Cir.1991); *Wardle v. Central States, Southeast Areas Pension*

---

1. Given Hancock's composite role as employer, administrator and fiduciary of the Plan at issue and the related pension plan, a conflict of interest is inevitable. *Firestone* recognized the need for contemplation of the role of conflicts of interest in determining the standard of review. *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956–57. Even the arbitrary and capricious standard of review "must be contextually tailored." *Brown v. Blue Cross and Blue Shield*, 898 F.2d 1556, 1564 (11th Cir.1990) (quoting *Maggard v. O'Con-* nell, 671 F.2d 568 (D.C.Cir.1982)). When a conflict of interest is ascertained, the reviewing court looks to the reasons articulated by the fiduciary to explain its actions and assesses them to insure against the taint of self-interest. *Id.* at 1566. Thus even if this Court were to review Hancock's decision under an arbitrary and capricious standard, the effect of Hancock's conflict of interest would compel a less deferential application of that standard.

*Fund,* 627 F.2d 820, 828–30 (7th Cir.1980), *cert. denied* 449 U.S. 1112 (1981); *Bair v. General Motors Corp.,* 895 F.2d 1094, 1096–97 (6th Cir.1990); *Calamia v. Spivey,* 632 F.2d 1235, 1237 (5th Cir.1980); *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1006–07 (4th Cir.1985); *Cox v. Keystone Carbon Co.,* 894 F.2d 647 (3rd Cir.1990), *cert. denied* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990); *Katsaros v. Cody,* 744 F.2d 270, 278–79 (2nd Cir.1984), *cert. denied* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

Moreover, several district courts within the First Circuit have held that actions to recover benefits under ERISA are equitable in nature and, therefore, do not warrant a jury trial. *Stanford v. AT & T Corp.,* 927 F.Supp. 524, 527 (D.Mass.1996) (party not entitled to jury trial in ERISA action because the relief sought was equitable); *Vartanian v. Monsanto Co.,* 880 F.Supp. 63, 72 (D.Mass.1995) (plaintiffs not entitled to jury trial in ERISA action to recover pension benefits); *Charlton Memorial Hosp. v. Foxboro Co.,* 818 F.Supp. 456, 459–60 (D.Mass.1993) (no right to jury trial under ERISA claim when issue is whether the administrator abused its discretion in denying benefits); *Berlo v. McCoy,* 710 F.Supp. 873 (D.N.H.1989); *Turner v. Leesona Corp.,* 673 F.Supp. 67 (D.R.I.1987); *Wilson v. Connecticut General Life Ins. Co.,* 670 F.Supp. 52 (D.Me.1987).

This Court finds the reasoning in the those cases persuasive and concludes that plaintiff's claim in this case is equitable in nature. Plaintiff's claim for a jury trial will, therefore, be stricken.

## ORDER

For the foregoing reasons,

1. Motion of defendant Hancock for summary judgment is DENIED;
2. Defendant Hancock's denial of ERISA benefits to Gentile will be reviewed under the *de novo* standard; and
3. Defendant Hancock's motion to strike plaintiff's claim for a jury trial is ALLOWED.

So Ordered.